Think that in the rightress better davis versus super important. Good morning, your honors. May it please the court. My name is Sam sailor on behalf of Michael Davis. I'd like to reserve 3 minutes for a bottle if I may. Okay. Looks like neither, you know, Mr. Bernanke or from passing correctly had any help. You did this all yourself since you're sitting there by yourself with no assistance. This is true. Although my colleague, Elisa Long, did write the brief in this case. Nice move. Begin by immediately denying any. Oh, no, no, no. She did. She did an incredible amount of work on this case. I do want to acknowledge. Thank you. I plan to focus a majority of my time before your honors on claim one regarding the first journal. Maybe you first deal with whether or not it can be preserved. Martinez. Yes, your honor. I'm going to ask this court to find that Mr. Davis's PCRA counsel was ineffective and that by not raising any claims regarding this first journal. And that didn't essentially evaluate trial counsel performance at all regarding these first journal entries. Thereby proceeding with the first journal. I'm sorry. What is your problem with the journal? The first journal that the PCRA counsel in an ineffective assistance claim never raised anything regarding the first journal. What is the issue that you're claiming he or she should have raised in order to have given effective assistance of counsel? But that claim is a substantial claim that has some merit. What do you mean? The claim is that trial counsel failed to object to the to the journal's admission, failed to ask for a continuance, failed to ask for any of the protections afforded to him by the Pennsylvania rules. What would be the guns to object to it? Well, I think it's at least unclear. At one point, trial counsel received notice that these entries were tucked in the back of this first journal and the entries. And I think in the brief, there is some allegation that I think I've got this right, that the Commonwealth admitted that there there was some awareness of a document they did not disclose. Is that right? The Commonwealth position now before this court for the first time, it seems is that they withheld or did not disclose these crucial entries, which are the most important piece of evidence in this. He said she said trial. Otherwise, it's all testimonial evidence. So as you can see in a case involving sex assault, this would be hugely, hugely important. Well, in a way, it is in a way it isn't because the jury is going to see and hear very graphic description of what he did one time. And granted, it's not every day she testified, but still this in in charges of indecent dealing with a minor, although it's not perhaps an everyday thing because there's only one journal entry. That one journal entry very graphically demonstrates that it happened at least once. Yes, sir. There are, in fact, two entries with two dates that were not apparently disclosed. My only argument here is that we have nothing on the record before this court to show that this ineffective system of counsel claim was explored at all. He superior court on direct appeal refused to look at the issue because they said the trial counsel waived the issue, saying that the trial counsel never objected to the admission of the journal in the first place, thereby not addressing at all in the direct appeal. Well, in an appellate lawyer land, that's a red flag for post-conviction collateral proceedings. This piece, this piece council should have taken that red flag and run with it and made some claim about the ineffective assistance of counsel to cross examine the victim, fail to object to the journal and deal with this important piece of evidence. It's not that PCRA counsel ignored or missed the issue. Right. He reframed it and to focus on the jury instruction. Your Honor, I would respectfully disagree. The jury instruction was regarding the second journal that was never found. If you recall, in the middle of the trial, they went and basically the judge basically stopped the trial and said, we're going to go try to find the second journal of which trial counsel, by the way, elicited unhelpfully in cross examination. The judge said, OK, we're going to find a second journal that supposedly has other entries about other sexual activity that was never found. The missing was the missing evidence instruction that PCRA counsel raises regarding journals to that second journal. There is not a single claim to PCRA in the post-conviction proceeding about this first journal. And I'm asking your honors to find that it does have that does have some merit and is a substantial claim. And certainly a prejudice, Mr. Davis, because it was the appropriate forum at the PCRA to address whether counsel was ineffective. We've never actually done that hearing. So I'm asking your honors to remand that to the district court so we can do a full hearing. There's also evidence that Mr. Davis himself in his post in his pro se petition at the PCRA level, as well as the district court level, recognize this as being a crucial issue. There's letters to counsel to PCRA counsel begging, begging to PCRA counsel to amend the petition to include a claim about this first journal. And PCRA counsel seemingly ignores these letters. I don't have a record to say what the response was, but there are letters included in the district court and in my client's pro se habeas that reflect that. There certainly is a strong presumption of tactics and strategy, but I can't see a strategy here in which PCRA counsel would entirely omit. Ineffective assistance of counsel claims regarding the single most important piece of evidence in this case. And even an investigation and a review of the PCRA itself leads me to believe, or I should lead this court to believe that the PCRA PCRA counsel's motivation was not to protect his client's interests and assert claims on behalf of his client, but it was to do the least amount of work and investigation possible. As Martinez says, it is virtually impossible for prisoners who are asserting ineffective assistance of counsel claims to, from prison, investigate those by themselves. And it looks like Mr. Davis was shouting at anyone into the abyss, as it were, of his PCRA counsel. And PCRA counsel was ignoring him. PCRA counsel. I'm sorry. You were not trial counsel. I was not trial counsel. No, the there was no nothing that I could find in terms of the inquiry and cross examination, suggesting that the mother was dependent on the defendant for drugs and that he was a drug dealer. And it was put forward as a motivation to testify the way she did. There was an objection. Well, there was a challenge made to that, I guess, to the closing argument. That's in the weeks with any request made for a curative instruction or limiting instruction because no instruction was given to the jury. Is that how that should be limited? That's correct. Your Honor, that's my understanding of the record. And this is this goes to issue to the failure of trial counsel to object or challenge any sort of basis. The Commonwealth had for asking incredibly prejudicial and insinuating questions about the drug dealing, the alleged drug dealing relationship between Mr. Davis and the victim's mother in this case. Well, Mr. Davis was a drug dealer, was he not? Mr. Davis had an arrest for drug dealing six months after this. These events allegedly occurred in a different address. Is that enough? Your Honor's to ask if he was drug, if he was dealing drugs out of that house five times, six times, seven times. I would submit no. It was asked to Miss Jefferson six times, I believe. Asked Mr. Davis multiple times. I don't have that right in front of me, but the brief does say that. As I read that, I thought there was a good faith basis to ask those questions. And maybe you can tell me why I'm wrong, but let me tell you why. First, the victim told the interviewers at the hospital that he was a drug dealer. Second, the her medical records from the hospital described Mr. Davis as allegedly mom's drug dealer. Third, the mother testified that she was an addict who had used drugs just days before. And there were a couple others. But I thought that that was sufficient to ask the question. Well, Your Honor, I would submit no, that is not. I submit that if during direct, for instance, if the victim was asked, well, is that person that's sitting at counsel table your mother's drug dealer? That's obviously an objectionable question right there. How is that different than being included as a stray comment to a medical professional as part of an exam? What else wasn't included? You know, I think what we're really talking about, though, is not necessarily the particulars of trial counsel's activities. We're saying that at this level, it's still a substantial claim with some merit that PCRA counsel, in this case, totally refuses to raise wholly, raises just regarding the closing argument, narrows it kind of needlessly, basically, and then doesn't raise it on appeal to the PCRA appeal court. So I think that that reveals itself as a lack of strategy and a lack of coherent strategy on behalf of PCRA counsel. That really, I'm wondering, lack of coherence, lack of strategy. I'm wondering if that would be sufficient under Strickland. I mean, clearly, it's better if you have a strategy. Can I tell you how many cases I presided over as a trial judge in state court where I had a good relationship with defense counsel and a jury trial? And I was sometimes asked, what is your strategy? Many times, some of the best defense attorneys in the city would tell me, well, judge, I don't have one yet. I got to wait and see how the evidence comes in. And I'm deferring on the opening statement. And I think I'll get something together by the time it's the Commonwealth rest. But I really don't have one right now. These were very, very experienced attorneys. Why would that be grounds for ineffective assistance under Strickland? Well, your Honor, I think two points what I would raise, which is that we're not talking necessarily about trial counsel's Strickland performance and prejudice. We have yet to have that hearing and yet to be able to gather that evidence. Let's hear from trial counsel for the first time in this whole case. This case, PCRA counsel never demanded trial counsel even give a strategy. So these huge omissions and these huge narrowing of claims needlessly made it so trial counsel never had to even explain a strategy at all or asking for the hearing is actually to explore that. My other response to that is there is case law that says there is a strong presumption of tactics that a petitioner, but a petitioner may rebut the suggestion that challenge conduct reflected merely a tactical choice by showing that counsel omitted obvious and significant issues while pursuing issues that were clearly weaker. This is a case in which there is no reason why he needs to narrow the claims. The PCRA is only, the argument section of the PCRA is only 10 pages long. This is not like a 50-page PCRA in which they're focusing the judge's claims. At the very least, it's hard to understand why he wouldn't ask for a limiting instruction or at least for a 403 balancing on the record or a 404B. I agree with your honor. I do see I'm out of time. I want to make sure I leave room for rebuttal. Did you leave your time for rebuttal? Three minutes, I believe. Okay, fine. This time does not get docked from your rebuttal time, so you're okay. Okay, well, I'll keep him. You don't have to keep going. You don't have to keep going. You can sit down if you'd like to. Even if you don't like it, you can sit down. Okay, thank you. That's what I'm looking for. Okay, thanks. Never want to tell a lawyer they should go ahead and talk. Sort of like telling Joe Biden. Yeah. Good morning. May it please the court. Daniel Vernacchio on behalf of the Appalachians in this matter, the superintendent of SCI Greaterford and the attorney general of Pennsylvania. I know you weren't trying the case because you do represent the attorney general in this matter, but, you know, it boggles my mind, and clearly judges would differ, and I judge from what my colleague said a few minutes ago. He wouldn't have any problems with it. But I'll tell you, if I was a trial judge and somebody came out with this question about drug dealing, even if there was a good faith basis for it, missed trial. There's no reason for that. There's absolutely no reason for that, especially when you've got testimony on the record where she says she's depending on him for money. So why do you have to bring out this? Why do the clowns have to bring out this? This is about drug dealing. Correct, Your Honor. And the questions were not asked to insinuate that he was guilty of sexual assault because he's a drug dealer. How does the jury know that? There was no charge. The jury was never told how they should use that. I would submit, Your Honor, that Ms. Kennedy, the prosecutor, closed and told the jury her reason for asking these questions, and the reason was these questions were relevant to credibility, specifically not Mr. Davis's credibility, specifically to the mother's credibility, as to why the mother got on the stand and accused her own daughter of lying and making up a rape accusation. To protect the drug dealer. To protect the drug dealer. And that was... The problem. That is the problem. The jury's looking at that. Well, she's trying to protect, quote, the drug dealer. You've got a 404B issue, the size of an elephant, walking around in that courtroom, and the jury's never told. You can only consider that testimony, assuming it ever gets in under 403, which is a big question in my mind. The jury's never told. You can only consider that for the motive of the witness in testifying, as she did, in denying her daughter's claims. You may not, absolutely may not, consider that in determining whether or not he is a bad person or whether or not he is a drug dealer. That's not an issue before you. They were never told that. Your Honor, I don't recall the specifics of what the trial court did or did not charge the jury with, but there's always the standard charges that are read. I looked for it. There's no cautionary instruction in there. My clerk looked for it. It's not in there. Yes, Your Honor. And I would just submit that these were, one, these were questions, not evidence. These were not in the Federal Public Defender's appellate brief. They framed this as introducing evidence of drug dealing, and I would dispute that. Attorneys' questions are not evidence. But they were so repeated, and they were then used in closing argument. They were used in closing argument, Your Honor. And the first thing I would say to that is the closing argument, one, is not the claim before this court. The claim before this court is only the cross-examination questions. When this court granted this certificate of appealability, it was expressly for the cross-exam questions only. But you say in your brief that the fact that the question was brought around cross-examination means that the closing argument was basically justified. It was based upon the record. If I made that impression, Your Honor, that was a mistake on my part. My primary position that I wanted to make in my brief was that the prosecutor had a good faith base to ask these relevant questions, and as far as closing argument goes, closing argument is just outside the scope of this appeal. So you wrote your brief. I did.  I did write my brief. So I can answer for my brief. As to the journal page claim, first I want to stress that the claim before this court is not for trial counsel's failure to object or failure to move for a mistrial. It is for his cross-examination. That was the specific claim that was raised by Mr. Davis in district court, and that was the claim that was preserved for appeal. And that's why this whole discovery issue becomes relevant, because I think this claim, I think there's a reason why PCRA counsel didn't raise this exact claim, because it doesn't make a whole lot of sense as a matter of logic. Suppose there is a discovery violation, which is not okay, but if you just accept that as true, then how is defense counsel supposed to know anything about this journal page? And that would be my primary response to the claim that was raised, or one of my primary responses to the claim that was raised. In their appellate brief, the federal public defender talks about failing to object and failing to move for a mistrial. I would submit that those are separate legal claims. Those are fair claims to raise if Mr. Davis raises them in district court. My other primary position as to the journal page is that it is cumulative evidence. It is written by the victim's hand, and this is something that the jury had already heard from the victim on direct exam. And basically, if a juror isn't inclined to believe the victim, they're not going to believe the victim's journal. Let me explain exactly what happened with the page. From your brief, there were two journal entries, two journal pages. One was disclosed and one wasn't. Is that the situation? No. Your Honor, there were two, apparently, scribbles on one piece of paper that was apparently tucked into the back of the journal. There hasn't been any finding of fact as to exactly what happened there. My reading of the record seemed to be, I guess maybe I was crediting defense counsel's version of events, but it didn't seem like he knew about this. And so I tried to... But how would he know about that, unless he's coming to act? No, right, and that's the thing, though, is there's... When acting pro se, Mr. Davis maintained that the journal entry, this journal page, was turned over. On direct appeal, Mr. Davis's, through counsel, but Mr. Davis's position was that the journal page was not turned over. There's a bit of confusion as to whether or not this was actually turned over, but my reading of the record was that it did seem that it wasn't turned over. But the bottom line... The journal scribbling was basically her, somewhat contemporaneous, not only was it contemporaneous, totally or not, but basically her recording the fact of the sexual encounter? Yeah, that was her, yes, Your Honor, that was her testimony. Two encounters, not all of them, but a couple of them. But on closing argument, Your Honor, defense counsel said, and I think he got it right, that he can write down on such and such a date, the detective, the detective in the case, Detective Johnson punched me, just because I wrote it down doesn't make it so. And I think that's the point, bottom line, Your Honor, with this journal page. This journal page was not outcome determinative. If a juror already believes the victim, then they're already going to believe the journal page. And if the juror, say a juror, doesn't believe the victim, believes the defense's theory of the case, that this is all a made-up rave accusation, then they're not going to believe the journal page either, because that's also written by the victim's hand. It's also basically testimony by the victim, but in a different form. It's quote-unquote written testimony, if we can call it that, as opposed to oral testimony. Well, if you have any doubts about her testimony in the witness stand today and what she said to you, she recorded it contemporaneously, and the jury will or will not accept that, and they might, by the defense argument, that, well, she could have written that at any point in time. She could have written it this morning coming into court. Or they may say, yeah, she did scribble it in this journal, and that corroborates what she said to us, and you can't dismiss the written journal quite that quickly. I don't know if that hurts you. It seems to me it cuts against defense counsel, because I don't know how you can show prejudice on having not known about something which seems to sink your client more, but that's a different issue. Yes, Your Honor, and I would agree that he cannot show prejudice. To touch on PCRA counsel, if I may, opposing counsel argued that he modified a claim and he dropped one of the claims on appeal, which is true,  I would submit it's the exact opposite. The fact that he took Mr. Davis' pro se claims, changed two of them at the PCRA level, dropped one of them at the PCRA appeal level, unless he was doing this just randomly, shows he was. Well, it looked pretty random, I'll tell you. To get away from myself. It really looked like he had the defense counsel Ouija board in front of him. Why would you argue the closing problem and not argue the direct, I mean, the cross-examination problem? Your Honor, I think the closing argument claim was honestly stronger, and that's why both appellate counsel on direct appeal and PCRA counsel both went that route. On direct appeal, he argued prosecutor misconduct for closing the way she did. Based upon the record that he sat there quietly and later established it during the course of the trial. Based upon the record that was established at the trial, and that was the same claim. By failure to object or asking for a cautionary instruction. Defense counsel did not object or ask for a cautionary instruction. That's correct, Your Honor. Then you jump up and down on the closing, which the defense counsel has kind of invited the prosecutor to make by remaining silent when all this testimony came out and then asking the judge to step in and stop it. Correct, Your Honor. The defense attorney did not do that. I would submit that one. That's pretty clever. Let's let the government close. We'll object to that. But we won't object to the foundation on the record that allows that closing to happen. And we're not going to ask for a limiting instruction that would prevent the attorney from stressing that in the closing argument. That's really clever. Your Honor, I think that I guess I would disagree with Your Honor about the, in the first place, the propriety of asking these questions in the first place. I think it's a fair claim whether or not the prosecutor should have been permitted to close on this. I think it's clear that she had a good faith basis to ask these relevant questions. If there were nothing on the record to establish motive to lie, to contradict her own daughter, maybe. But she's already saying that he's giving her money. The source of the money, therefore, it seems to me, becomes totally irrelevant, especially when that source is something like drug dealing with all the inflammatory suggestions that sets off. You didn't need it. You just did not need it. That's why I said it would have been in my courtroom. That would have been a missed trial faster than the light goes out when you hit the light switch. Your Honor, maybe he didn't need it, but I still think that's a separate issue from whether or not it's permissible. Maybe there are a lot of things that a party at trial may not, quote, unquote, need, but I still think it was fair cross-exam based on the victim's mother's credibility. As to, we didn't really touch on the medical records claim. Just as to that, I would just briefly state that the records were equivocal. They stated that 80 to 90 percent of children with known sexual assault have normal exams, and so the failure to introduce these, quote, unquote, failure to introduce these records was not prejudicial. In their appellate brief, the federal public defender essentially argues that they should have called their own expert. I would once again submit that that's a separate legal claim. The claim before this court is ineffective assistance for failing to admit these records, and these records state that no medical conclusions can be drawn. And with that, I would just, if there are no further questions, I would ask that this court affirm the ruling of the district court. Thank you. Thank you, Your Honors. I just want to briefly touch on a few things. One, I think Your Honor does identify the issue here in terms of claim. Two, that it is a 404B issue. It's essentially flinging mud at Mr. Davis, my client, while he's sitting at trial counsel via Ms. Jefferson by asking questions to Ms. Jefferson. Two, the government said during, just said just now, that it was a fair cross-examination. However, in his appellate brief, he writes, it is much less clear, however, that there is sufficient evidence for the prosecutor to make her closing argument the way she did. And it's a quote from his brief. I think he acknowledges in his brief that it was the evidence on which to argue was suspect at best. The Commonwealth at the PCRA level writes, quote, and this is on the appendix, page 424, from even a cursory examination of the excerpts above, it is plain that the prosecutor's closing argument was derived from the testimony at trial. They are trying to have it both ways here. Just like in issue one, they're trying to have it both ways. And I think the court should be extremely suspicious of that. And certainly in that context, see that PCRA counsel's refusal to claim these issues or frame these issues as ineffective systems of counsel issues should excuse the default, because that itself was deficient performance and certainly prejudice, Mr. Davis. I'll address very briefly, counsel just mentioned that claims regarding the cross-examination of the journal raised pro se at the district court level. And then he's saying, well, it should be limited to this cross-examination. It shouldn't go into anything about objection to the journal or anything like that, because Mr. Davis just raised the cross-examination. That may be the header to the pro se petition in that section. But there is language here on appendix 830 in which counsel had three plausible options, call for a sidebar to raise the question of withheld or missing evidence, abandon the subject because no damage had been done, et cetera, et cetera. He clearly talks about more than just the ineffectiveness of the cross. He talks about how the journal was dealt with by trial counsel. That's from Mr. Davis' pro se petition at the district court level. The journal, it seems to me, is totally incriminating. There's nothing Brady-like about that, is there, about the journal? Well, Your Honor, I think, again, it was never challenged before as a Brady claim. It was also never challenged as an ineffectiveness claim. It was ruled by the Superior Court on direct appeal that the issue was waived because there was no objection. So at that point, that's a flag of ineffective assistance. You have to at that point figure out. Why wouldn't the defense counsel run from that journal? Why would defense counsel want even to play with the idea of getting that in or make the jury? It's totally incorporatory. I mean, I think the bottom line here is we don't know a lot of what trial counsel did or knew. But don't forget the inference of effective assistance of counsel. There's a strong deference that we give to defense counsel in the law. Given that deference, and you've got something here which is very incriminating, maybe you could have neutralized that in the way that's suggested in the brief. But on his face, I don't see anything excorporatory about that, that defense counsel can be faulted for not using and not exploring. Well, if I understand Your Honor's question correctly, it's how he dealt with this encountering of the information. I still think the record is unclear. And frankly, I'm not sure the government gave a straight answer as to when the journal was actually disclosed. I don't think we actually know. That cries out for an evidentiary hearing at the district court level. And it also cries out to find that this claim was clearly substantial and had some merit, and PCRI counsel just ignored it entirely. If we can't even resolve that part, then PCRI counsel is clearly deficient under Strickland. That's my bottom line here, and that's what I'm asking the court grant. Thank you.